**NOT FOR PUBLICATION**

FILED

JAMES J. WALDRON, CLERK

**February 8, 2016**

United States Bankruptcy Court
Newark, NJ
By:  /s/ Margaret Cohen, Deputy

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| In re:<br><br>SUFIAN ABBASI,<br><br><div align="right">Debtor.</div> | Case No.:   12-33087  VFP<br><br><br>Chapter     13 |
| MAHMOUD ELAYAN and WAEL ELAYAN,<br><div align="right">Plaintiffs,</div><br>v.<br><br>SUFIAN ABBASI,<br><br><div align="right">Defendant.</div> | Adv. Pro. No.  15-2114 VFP |

## MEMORANDUM OPINION

### APPEARANCES

George J. Cotz, Esq.
47 S. Franklin Turnpike
Ramey, NJ  07446
Counsel for Plaintiffs

Scura, Wigfield, Heyer & Stevens, LLP
Christopher J. Balala, Esq.
David L. Stevens, Esq.
1599 Hamburg Turnpike
Wayne, NJ  07470
Counsel to Debtor/Defendant

**VINCENT F. PAPALIA, Bankruptcy Judge**

## I.    INTRODUCTION

These matters come before the Court on the motions by Debtor-defendant Sufian M. Abbasi (the "Debtor"): (1) to dismiss the adversary complaint; and (2) for summary judgment on the adversary complaint filed by Plaintiffs Mahmoud and Wael Elayan (the "Plaintiffs").  The Plaintiffs filed this complaint to except from discharge under 11 U.S.C. § 523(a)(2)(A) a claim in the amount of $250,000 - $631,000 (the "Complaint").[1]  Because Debtor's original motion to dismiss included a certification and required consideration of matters outside the pleadings, the Court converted the motion to dismiss to one for summary judgment under Fed. R. Civ. P. 12(d) and Fed. R. Bankr. P. 7012 and set a schedule for supplemental submissions by the parties, all of which have now been made and considered by the Court.

The Debtor filed both motions in lieu of answer based on the sole argument that the Plaintiffs filed the Complaint out of time under Fed. R. Bankr. P. 4007(c).  The Plaintiffs filed objections to both motions.  The issue for the Court is whether the Plaintiffs, originally unscheduled on the petition, had actual notice or knowledge of the bankruptcy case in time to file a timely nondischargeability Complaint.

## II.    JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the Standing Orders of Reference entered by the United States District Court on July 10, 1984 and amended on October 17, 2013.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I) and (O).  Venue is proper in this Court under 28 U.S.C. § 1408.  The Court issues the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. To the extent that any of the findings

---

[1]  This one-count Complaint does not cite a subsection under 11 U.S.C. § 523 but alleges "fraud" and "misrepresentation" and presumably seeks to go forward under 11 U.S.C. § 523(a)(2)(A).

of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

### III.    STATEMENT OF FACTS

The Court relies on allegations in the Complaint and the docket in this case and adversary proceeding for certain prepetition chronology and a statement of facts as to the underlying transactions.  Most of those facts have not been disputed by Debtor, other than with respect to when Plaintiffs had notice of his bankruptcy filing, which is the issue at the center of this motion. Those undisputed facts are accepted as true for purposes of this motion only.

### A.  **Plaintiffs' Relationship to and Investments with the Debtor**

According to the Complaint, the Plaintiffs have a common address, but their relationship is not stated (Dkt. No. 1).  The Debtor described the Plaintiffs as his "distant cousins" (Dkt. No. 12, Cotz Cert., Ex. B,  Transcript of April 28, 2015 hearing in Superior Court, T4:20-22) ("4/28/15 Hr'g Tr.").  In 2006, Debtor formed 211 Webster LLC ("Webster") for the purpose of developing certain property (Dkt. No. 1, ¶ 2, 5).[2]  Plaintiffs invested $590,000 in Webster and held an 81.6% interest. Debtor was managing member and held the other 18.4% interest.  (*Id.* ¶¶ 3-4).  Originally, Plaintiffs were to be paid first as the six (6) units sold (*Id.* ¶¶ 5, 8-9).  More specifically, the Webster Operating Agreement provided that Plaintiffs' $590,000 capital contribution would be paid first from any sale proceeds, with profits distributed to the members according to their respective interests.  (*Id.* ¶ 5).

As units began to sell, Plaintiffs were not repaid, in contravention of the parties' agreement. Instead, the proceeds were used by the Debtor to pay a different creditor or creditors.  After Plaintiffs learned of these sales, Plaintiffs, Debtor and Debtor's parents apparently reformed their

---

[2] Docket number references are to the adversary proceeding unless otherwise stated.

agreement so that Plaintiffs would receive proceeds from the last two units (*Id*. ¶¶ 7-8). Plaintiffs ultimately received $124,000 from the sale of the final unit only, as the proceeds of the sales of the next three units were paid to third parties, without Plaintiffs' knowledge or consent (*Id*. ¶¶ 5, 7-10). Plaintiffs apparently sustained a loss of at least $466,000 ($590,000 less $124,000) on their original investment in Webster (*Id*. ¶¶ 5, 7-10).

In 2006, Debtor also formed 6112 Meadowview LLC ("Meadowview") for the purpose of developing a different property (Dkt. No. 1, ¶¶ 11-12). Plaintiff Wael Elayan invested $165,000 in Meadowview and held an 81.6% interest. Debtor was managing member and held the other 18.4% interest. (*Id*. ¶¶ 13-14). The Meadowview Operating Agreement provided that Plaintiff's $165,000 capital contribution would be paid first from the sale of the subject property, with profits then distributed to the members according to their respective interests.

Debtor allegedly improperly sold to a third party what Debtor represented to be Debtor's 50% interest in Meadowview, without Plaintiffs' knowledge or consent, and Plaintiff apparently recovered nothing from this project (*Id*. ¶¶ 16-18). On that basis, the Plaintiffs appear to assert that they lost at least $631,000 between them on their investments with Debtor ($466,000 + $165,000). The Adversary Complaint, however, contains no specific dollar demand.

**B.  The State Court Actions**

In or around 2011, Plaintiffs filed actions against the Debtor and his parents in Superior Court of New Jersey, Law Division, Bergen County, Dkt. No. BER-L-962-11 and BER-L-958-11 (Dkt. No. 5, Cotz Cert., ¶ 3) (the "2011 State Court Action"). These actions were dismissed without prejudice (*Id*. ¶ 3). In or around 2012, Plaintiffs filed another action against Debtor and his parents in Superior Court of New Jersey, Law Division, Bergen County, Dkt. No. BER-L-5590-12. The parents filed their own case, against whom it is not clear, under Dkt. No. BER-L-8910-12, which was consolidated into Plaintiffs' action (the "2012 State Court Action")

4

(Dkt. No. 5, ¶ 4).[3]  The Plaintiffs provide no filing date for the 2012 State Court Action, but a State Court complaint suffixed "-12" presumably would have been filed in 2012.

**C.  The Debtor's Bankruptcy Filing and the Alleged Notice to Plaintiffs**

    **(i)  The Initial Filings in the Bankruptcy Case**

The Debtor filed this Chapter 13 petition on September 21, 2012.  His petition, though incomplete at twenty pages, did not schedule the Plaintiffs as creditors on "F," and he did not include them in the matrix (Main Dkt. No. 1).  Plaintiffs, therefore, did not receive the *Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines*, issued on September 22, 2012, reissued on September 24, 2012 and mailed on September 26, 2012 (Main Dkt. No. 7) (the "Notice"), as is essentially confirmed by Debtor's Statement of Undisputed Material Facts at ¶ 7 and the underlying Notices and related documents.  The Notice scheduled the § 341 meeting of creditors for October 30, 2012; the deadline for filing a nondischargeability complaint at December 31, 2012; and the claims bar date at January 28, 2013 (Main Dkt. No. 7).

On October 5, 2012, the Debtor filed missing schedules, including the Statement of Financial Affairs ("SoFA") in which he scheduled the Plaintiffs' 2011 State Court Action at paragraph 4a as "Dismissed" (Main Dkt. No. 9, ¶ 4a), but did not otherwise schedule Plaintiffs.  Plaintiffs did not file a Complaint by the December 31, 2012 bar date or file a proof of claim by the January 28, 2013 bar date.  The Debtor's sixty-month Plan was confirmed on March 8, 2013 with a proposed *pro rata* distribution to general unsecured creditors.  The last payment under the sixty-month Plan is due on September 1, 2017.

    **(ii)  Debtor's Contentions as to Notice**

Debtor asserts that he did not schedule the Plaintiffs because he did not believe he owed

---

[3] Debtor's counsel states in his Brief in support of the motion to dismiss that Debtor was not joined to the 2012 State Court Action until *March 2014* (Dkt. 4-2, Stevens Brief, p.3).

them an obligation unless they held a judgment against them and that they filed "frivolous claims" against him which were dismissed (Dkt. No. 4-1, Debtor's Cert., ¶ 6).[4]  Despite that alleged belief, Debtor later acknowledged that he breached his agreements with Plaintiffs and then lied to them in his testimony in the 2012 State Court Action, as is discussed in more detail below.  In his Certification, Debtor also states that he made his bankruptcy filing "generally known to my family, friends, and religious community" (Dkt. No. 4-1, ¶ 5).  He also certifies that Plaintiffs "[w]ithin the first few weeks of my bankruptcy case . . . were informed of my filing by me and community members" (Dkt. No. 4-1, ¶ 6).

Debtor further certified on October 6, 2015 that he is "searching for phone records and emails" with Plaintiffs and others to corroborate when Plaintiffs knew of the bankruptcy (Dkt. No. 4-1, ¶ 7).  Debtor claims that, "[i]f called to testify I will present evidence of their knowledge in the days after I filed and certainly before the Creditors' Meeting," including phone records, emails, "calls to potential witnesses" and an audio recording of a conversation with Plaintiffs about "two years ago" in which Debtor allegedly advised them of his bankruptcy filing and Plaintiffs acknowledged that "no wrong doing was intended on [his] part."  (Dkt. No. 4-1, ¶¶ 7-8).  Despite these representations, and being offered the opportunity to provide the identified information to the Court at least twice, Debtor has provided no corroboration for any of the above assertions and, specifically, no proof (beyond his Certification) that the Plaintiffs had notice or actual knowledge of Debtor's bankruptcy before the December 31, 2012 deadline for filing a nondischargeability complaint.

Debtor's counsel states in his Brief in support of the motion to dismiss that Plaintiffs added Debtor to the 2012 State Court Action in *March 2014* (Dkt. 4-2, Stevens Brief, p.3).  Debtor's

---

[4] Debtor's Certification at Dkt. No. 11-1 in support of his summary judgment motion is an exact duplicate of the Certification (at Dkt. No. 4-1) he previously filed in support of his dismissal motion.

counsel then advised Plaintiffs' counsel, Mr. Cotz, by telephone call made at that time that "they

were in violation of the automatic stay and all collection efforts must cease" (Dkt. No. 4-2, p.3).

On October 3, 2014, Debtor was dismissed without prejudice from the 2012 State Court Action

(Dkt. No. 11, Debtor's Statement of Material Facts, Ex. D, April 29, 2015 docket display from the

2012 State Court Action) ("R. 56.1 Statement").

On January 16, 2015, Debtor's counsel sent Plaintiffs' counsel a letter which referenced

the March 2014 telephone call and states in full:

> In March 2014 you and I spoke concerning Mr. Abbasi's bankruptcy filing and
> I informed you under 11 U.S.C. § 362, an Automatic Stay on all collection
> efforts is in place and any collection efforts must cease. I am informed that on
> behalf of your client you have taken renewed action against Mr. Abbasi.
>
> Unless you immediately inform me that you will withdraw the pending motion
> (and cease all collection efforts as to Sufian Abbasi), I will seek an order
> holding your client in contempt of the Automatic Stay. I will also seek
> sanctions against your client and an award to Mr. Abbasi for necessary costs
> to enforce the stay.

(Dkt. No. 11, R. 56.1 Statement, Ex. B).[5]  It is not clear what "renewed action" was taken after the

Debtor was dismissed without prejudice from the 2012 State Court Action on October 3, 2014.  In

any event, the earliest concrete reference from the Debtor for Plaintiffs' (or, more accurately,

Plaintiffs' attorney) having notice or actual knowledge of the bankruptcy case is March 2014,

fifteen months after the deadline for filing the Complaint passed.

Plaintiffs' counsel does not directly acknowledge the March 2014 telephone call or the

January16, 2015 letter, but does certify that the 2012 State Court Action "was dismissed, as to the

Debtor, when we were advised of his filing" (Dkt. No. 5, Cotz Cert., p.2).  Plaintiffs' counsel

further states that Plaintiffs went to trial against Debtor's parents as guarantors in April 2015 and

that the jury awarded Plaintiffs $250,000 in damages against the parents (Dkt. No. 5, Cotz Cert.,

---

[5] Debtor's counsel also provided the January 16, 2015 letter at Dkt. 4-2, Brief, Ex. C.

7

p.2).

### (iii)    Debtor's State Court Trial Testimony

On April 28, 2015, Debtor testified on his parents' behalf in the trial of the 2012 State Court Action (Cotz Cert., Dkt. No. 5, p.2; Cotz Cert., Dkt. 12, Ex. B, Transcript of Debtor's testimony, direct and cross-examination, on April 28, 2015 hearing in 2012 State Court Action) ("4/28/15 Hr'g Tr."). Debtor stated, in relevant part to this motion, that Plaintiff Mahmoud Elayan approached Debtor to make a $300,000 investment (4/28/15 Hr'g Tr. 7:9-20); that Debtor took a loan or loans against the Webster property in violation of the Webster agreement and concealed that fact from the Plaintiffs (4/28/15 Hr'g Tr. 14:4-16:11); that Debtor lied to the Plaintiffs when the Webster units were sold and ultimately admitted to Plaintiffs that Debtor had compromised their investment (4/28/15 Hr'g Tr. 16:12-17:16; 55:7-56:1).

### (iv)    The June 2015 Amendment to the Debtor's Schedules

On June 3, 2015, Debtor amended Schedule F to add "George J. Cotz, Esquire," labeled "Counsel for *Mahmoud Abdalla Jaloudi*" (Main Dkt. No. 87) (emphasis supplied). An Order permitting the amendment was entered on June 4, 2015 (Main Dkt. No. 88).[6] Debtor's certification of service of this Order states that on June 8, 2015 it was mailed to Plaintiffs' counsel at his Ramsey, New Jersey office, and to:

> Mahmoud Elayan
> *a/k/a Mahmoud Abdalla Jaloudi*
> 315 7th Street, Unit C
> Fairview, NJ 07022

(Main Dkt. No. 90, Cert. of Service of Order) (emphasis supplied). The street address belongs to the Plaintiffs, but Plaintiffs' counsel certifies that Plaintiff Mahmoud Elayan and *Mahmoud Abdalla Jaloudi are not the same person* (Dkt. No. 12, Cotz Cert., ¶ 2). "Abdalla Jaloudi" is an

---

[6] This amendment was not made on *June 8, 2014* as asserted by Debtor's counsel (Dkt. No. 4-2, Brief, p.3).

attorney, colleague and client whom Mr. Cotz represented against Debtor on another matter (Dkt.

No. 12, Cotz Cert., ¶ 2).[7]  Thus, to this day, the Debtor has not properly scheduled the Plaintiffs.

**D.    Plaintiffs' contentions as to Notice**

In their supplemental certifications, Plaintiffs indicate that they recall hearing from Mr.

Cotz in late March of 2014 that the Debtor had filed for bankruptcy protection, but that this

information did not come from Debtor.  *See, e.g.,* Wael Elayan Cert. at ¶ 2.  (Dkt. No. 13).

Plaintiffs also provided transcripts of two conversations with the Debtor that do not appear to

mention the Debtor's Bankruptcy filing (Dkt. No. 14, Exs. 1 and 2).  Either or both those recorded

conversations appear to be the conversation(s) Debtor referred to in his certification as providing

proof of Plaintiffs' prior knowledge of his bankruptcy filing, but Debtor did not produce.  Plaintiffs

also note the failure to list them in Debtor's bankruptcy filings and the deficiencies when Debtor

did attempt to list them by amending his schedules in June 2015 -- nearly three years after his

filing.   On the basis of these submissions, the Plaintiffs deny that they had actual knowledge of

Debtor's bankruptcy case prior to the deadline to object to the dischargeability of their claims.

*See* Plaintiffs' Counter Statement of Material Facts at ¶ 9 (Dkt. 16).

The Plaintiffs filed this Adversary Complaint on August 11, 2015, a date which is:

- Two years and 7.5 months after the December 31, 2012 Complaint deadline, as to which Plaintiffs did not receive notice from the Bankruptcy Court.
- Seventeen months after March 2014, when Stevens allegedly told Cotz about Debtor's bankruptcy.
- Ten months after Debtor was dismissed without prejudice from the 2012 State Court Action *because* of the bankruptcy, as certified by Cotz (Dkt. No. 5, Cotz Cert., p.2).
- About two months after Debtor added "Cotz" to his bankruptcy schedules as counsel for "Mahmoud Abdalla Jaloudi."

---

[7] Debtor in his April 28, 2015 testimony in the 2012 State Court Action identifies Abdalla Jaloudi as an attorney from whom the Debtor borrowed money, including a loan to enable Debtor to buy Debtor's father's house (Dkt. No. 12, Ex. B, 4/28/15 Hr'g Tr. 30:15-31:9; Tr. 49:9-16).

As noted, Debtor's motion to dismiss the Complaint was converted to a motion for summary judgment by this Court. Both motions were based exclusively on the ground that the Complaint was not timely filed under Fed. R. Bankr. P. 4007(c) and on the basis of laches. For the following reasons, the Debtor's motion, as converted to one for summary judgment, is denied.

## IV.    CONCLUSIONS OF LAW

### A. <u>The General Standards Governing the Time to File a Nondischargeability Complaint</u>

Bankruptcy Rule 4007(c) generally requires that a complaint objecting to the discharge of certain debts of the Debtor be filed within sixty (60) days of the date set for the meeting of creditors under 11 U.S.C. § 341(a). Fed. R. Bank. P. 4007(c) provides in full as follows:

> (c) . . . Except as otherwise provided in subdivision (d), a complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). The court shall give all creditors no less than 30 days' notice of the time so fixed in the manner provided in <u>Rule 2002</u>. On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired.

11 U.S.C. § 523(a)(3) ("Exceptions to Discharge") states in full:

> A discharge under section . . . 1328(b) of this title does not discharge an individual Debtor from any debt—
> . . .
> (3) neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the Debtor, of the creditor to whom such debt is owed, in time to permit—
>
> (A) If such a debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, *unless such creditor had notice or actual knowledge of the case in time for such timely filing* or;
>
> (B) if such debt is *of a kind specified in paragraph (2)* [misrepresentation or fraud], (4) [fraud or defalcation while acting in a fiduciary capacity], or (6) [willful and malicious injury to the property of another] of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, *unless such creditor had notice or actual knowledge of the case in time for such timely filing* and . . . .

11 U.S.C. § 523(a)(3) (emphasis and bracketed language supplied). 11 U.S.C. § 523(c)(1) requires

10

a party-in-interest to take an affirmative step to except § 523(a)(2), (4) or (6) debts from discharge and provides that:

> Except as provided in subsection (a)(3)(B) of this section [identified above], the Debtor shall be discharged from a debt *of a kind specified in paragraph (2), (4) or (6)* of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

11 U.S.C. § 523(c)(1) (emphases added).  As noted, Fed. R. Bankr. 4007(c) and Fed. R. Bankr. P. 7001(6) require the Court to determine exception to discharge under § 523(a)(2), (4) or (6) by means of a complaint "filed no later than 60 days after the first date set for the meeting of creditors" or within an extended deadline time applied for before the first deadline elapses. However, that deadline is inapplicable if the creditor did not have "notice or actual knowledge of the case in time for such timely filing . . ."  11 U.S.C. § 523(a)(3)(B).

11 U.S.C. § 523(a)(3)(B) still requires a court to determine that the debts *are* (a)(2), (4) or (6) debts rather than ending on the creditor's allegation that they are *"of a kind specified"* in the statute.  The Debtor who fails to schedule a debt in time for the creditor to file a § 523(c) / 4007(c) complaint enables the creditor to file an exception to discharge complaint outside normal time limits and *outside the exclusive jurisdiction of the bankruptcy court*. *In re Beezley*, 994 F.2d 1433, 1441 (concurrence) (upholding the denial of Debtor's motion to reopen), cited with approval in *Judd v. Wolfe*, 78 F.3d 110, 114-16 (3d Cir. 1996);[8]  *see also In re Smith*, 582 F.3d 767, 780 (7th Cir. 2009) ("Because [creditors] were not given timely and sufficient notice of Smith's bankruptcy for them to file complaints to determine the nondischargeability of their claims in compliance with the schedule set by the bankruptcy court, they remained free to file such complaints at any time").

---

[8] The opinion in *Judd*, a § 523(a)(3)(A), not (a)(3)(B), case, appears to say in dictum at 115-16 that § 523(a)(3)(B) creates self-executing exception to discharge for unscheduled (a)(2), (4) or (6) debts, but then at 116 n.12 notes in parsing *Beezley* that the *Beezley* court had *not decided* whether the particular debt was excepted from discharge.

11

In *Smith,* the claimants were allowed to file post-discharge willful and malicious injury complaints after the Rule 4007(c) deadline in state court and then return to bankruptcy court for a § 523(a)(6) determination.

**B.  <u>The Asserted Facts Relating to Notice in this Case</u>**

In this case, by the proofs submitted to date, and affording Plaintiffs the benefit of all favorable inferences, the earliest date by which the Plaintiffs at least arguably had notice or actual knowledge of the bankruptcy case was March 2014, when Debtor's counsel asserts that he told Plaintiffs' counsel to stop prosecuting the 2012 State Court Action against the Debtor (Dkt. No. 4-2, Brief, p.2 and Ex. C).  In this regard, the Debtor has not corroborated his initial, general and unsupported statement that the Plaintiffs knew of the bankruptcy before the October 30, 2012 meeting of creditors, nor has Debtor provided any of the proofs he certified he had to that effect (*Cf*. Abbasi Cert. (Dkt. No. 4-1) at ¶¶ 7-8).

As was noted above, Plaintiffs indicate that they recall hearing from Mr. Cotz in late March of 2014 that the Debtor had filed for bankruptcy protection, but that this information did not come from Debtor.  *See, e.g.,* Wael Elayan Cert. at ¶ 2 (Dkt. No. 13).  Plaintiffs also provided transcripts of two conversations with the Debtor that do not appear to mention the Debtor's bankruptcy filing (Dkt. No. 14, Exs. 1 and 2).  Further, Debtor acknowledges that he omitted Plaintiffs from his bankruptcy filings until June of 2015, when he amended his schedules to attempt to include Plaintiffs, but listed an incorrect name and did not identify at all one of the Plaintiffs.  On this basis, Plaintiffs deny that they had actual knowledge of Debtor's bankruptcy case prior to the deadline to object to the dischargeability of their claims.  *See* Plaintiffs' Counter Statement of Material Facts at ¶ 9 (Dkt. 16).

In sum, other than Debtor's unsupported, vague and now disputed statement in his Certification (which does not indicate any precise dates or times that Debtor told Plaintiffs about

his bankruptcy), nothing in the record or in defendant's submissions to date demonstrates that Plaintiffs had "notice or actual knowledge" of the bankruptcy case in time to file a Complaint before the December 31, 2012 deadline or the October 30, 2012 meeting of creditors, as is asserted by Debtor.  Under these circumstances, the Court cannot and does not find, as a matter of law, that the Plaintiffs' Complaint is time-barred under 11 U.S.C. § 523(a)(3)(B) and Bankruptcy Rule 4007(c).  As is set forth in more detail below, exactly when the Plaintiffs learned of the Debtor's bankruptcy is a disputed issue of material fact that will be decided after discovery and/or trial and precludes the grant of summary judgment at this time.

### C.  The Summary Judgment Standards

As noted above, pursuant to Fed. R. Bankr. P. 7012 and Fed. R. Civ. P. 12(d), this Court converted Debtor's motion to dismiss to one for summary judgment pursuant to Fed. R. Bankr. P. 7056 and Fed. R. Civ. P. 56(d).  Both motions were based exclusively on the assertion that the Complaint is untimely.  Fed. R. Civ. P. 56(a) and Fed. R. Bankr. P. 7056 require the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056; *Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004) ("A fact is material when its resolution 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'") (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of demonstrating that there are no genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The burden shifts to the nonmoving party to present evidence establishing that a genuine issue of material fact exists, making it necessary to resolve the difference at trial.  *In re NorVergence, Inc.*, 384 B.R. 315, 370 (Bankr. D.N.J. 2008).  "Inferences and facts should be construed in the light most favorable to the

13

non-moving party." *Id., citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986)).

In this case, as noted above, there is a genuine issue of material fact about when the

Plaintiffs had notice or actual knowledge of the Debtor's bankruptcy case. Debtor has not

supported with any credible evidence his general allegation that the Plaintiffs had actual

knowledge of the bankruptcy case in late 2012 so that Plaintiffs could have filed their Complaint

before the December 31, 2012 bar date. Further, Debtor has failed to provide any of the additional

phone records, emails, or audio recordings which he claims would show that Plaintiffs had actual

knowledge of his bankruptcy case before the creditors' meeting. In response, Plaintiffs have

denied knowledge of Debtor's bankruptcy filing prior to March of 2014, thereby giving rise to a

disputed issue as to a material fact which precludes summary judgment at this time. Debtor's

motion for summary judgment based on the claim that the Complaint is untimely is therefore

denied at this juncture, without prejudice to Debtor's right to take discovery regarding the notice

issue and, if appropriate, raise that issue again after discovery or at trial.

### D. <u>Laches</u>

Debtor also argues that Plaintiffs are barred by laches from prosecuting the August 11,

2015 Complaint. In the circumstances of this case, this Debtor may not avail himself of the

equitable defense of laches (to the extent it even applies in a § 523(a)(3)(B) analysis). *See In re*

*Beaty*, 306 F.3d 914, 927-28 (9th Cir. 2002). The elements of laches, which is an equitable

defense, are "(1) lack of diligence by the party against whom the defense is asserted, and (2)

prejudice to the party asserting the defense." *E.E.O.C. v. Great Atlantic & Pacific Tea Co.*, 735

F.2d 69, 80 (3d Cir. 1984), *cert. dismissed*, 469 U.S. 925 (1984). The Debtor bears the burden of

proving these conjunctive elements. *Id.* at 80.

The Court first notes that according to the Debtor himself, he intentionally omitted the

Plaintiffs from his petition (Dkt. No. 4-1, Cert. at ¶ 6).  The Debtor's deliberate exclusion of Plaintiffs from his schedules and bankruptcy noticing process and failure to attempt to schedule them until June 3, 2015 -- long after the December 31, 2012 bar date -- demonstrate that the Debtor bears responsibility, at least in substantial part, for the delay.  Further, when Debtor did finally attempt to list them, he did so inaccurately by naming their attorney and another different person.

However, whether properly or improperly named, the fact is that Debtor waited almost three years to add Plaintiffs to his schedules and therefore may not be heard to complain about any alleged delay or lack of diligence by Plaintiffs in their filing of the nondischargeability Complaint.  The Plaintiffs filed their nondischargeability Complaint about two months after this amendment, so there was no unreasonable delay.  For the same reasons, the Court finds that there was no unreasonable or prejudicial delay, even if the March 2014 date is used.

The Court further finds that the prejudice to this Chapter 13 Debtor is nonexistent or minimal, as his Plan payments continue through September 1, 2017 and Debtor himself caused much of the delay by his failure to properly identify Plaintiffs in his bankruptcy filings as noted above.[9]  In short, he who seeks equity must do equity, *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.,* 679 F. Supp. 2d 512, 521 (D. Del. 2010), and Debtor has not done equity here.  Thus, under these circumstances, Plaintiffs' Complaint is not time barred by laches and Debtor's motion on this basis is denied as well.

---

[9] Additionally, laches generally does not apply when the statute of limitations has not run, as is the case here (at least at this point of the proceedings).  *Petrella v. Metro-Goldwyn-Mayer,*—U.S.——, 134 S.Ct. 1962, 1973–74 (2014) (the laches defense applies "to claims of an equitable cast for which the Legislature has provided no fixed time limitation").  In this case, based on the state of the record to date, and the standards applicable to a summary judgment motion, the Court is not able to determine as a matter of law that the "statute of limitations" effectively imposed by 11 U.S.C. § 523(a)(3) and Bankruptcy Rule 4007(c) has run and that, therefore, Plaintiffs' Complaint should be dismissed.   As noted above, this interim ruling is made without prejudice to Debtor's right to reassert this defense after further discovery or at trial.  In other words, Debtor may still attempt to prove Plaintiffs had timely notice through discovery.  In any event, if the Court ultimately finds that Plaintiffs did receive timely notice, the laches defense is irrelevant as Plaintiffs' Complaint would be barred by the timely notice.  Conversely, if the Court finds Plaintiffs did not receive timely notice, laches is inapplicable for the reasons stated in this footnote and above.

A pretrial conference will be scheduled by the Court.  An appropriate Order accompanies

this Opinion.


                                          /s/ Vincent F. Papalia
Dated: February 8, 2016                  VINCENT F. PAPALIA
                                         United States Bankruptcy Judge